IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER THOMPSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 04 C 6059 |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| GENE JUNGWIRTH, Warden, | ) |
| East Moline Correctional Center, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Roger Thompson's ("Thompson") Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner Thompson challenges on a variety of grounds his conviction for attempted armed robbery. For the following reasons, the Petition is denied.

## I. BACKGROUND

### A. FACTS

Officer Anthony Skokal ("Skokal") of the Chicago Police Department ("CPD") testified at the petitioner's trial that on July 26, 2000, at 2:20 a.m., he and his partner, Officer Scott Plebanski ("Plebanski"), were in plain clothes and driving an unmarked police vehicle in the Hyde Park neighborhood of Chicago. As the officers approached 47th Street and Cottage Grove, they observed an individual – later identified as the defendant and hereinafter referred to as the "defendant" – saying, "yo, yo what do you need?" Skokal believed the defendant was selling narcotics. Skokal stopped the vehicle and the defendant approached the driver's side window and again asked Skokal what he needed. Skokal replied that he wanted "two blows," meaning

two bags of heroin. The defendant then inquired on two occasions whether Skokal had any money. Skokal assured the defendant that he did, but the defendant stated that he did not have the drugs with him. The defendant suggested that the officers meet him behind a Murray's Auto Parts store located on the southeast corner of 47th Street and Cottage Grove. The officers watched the defendant walk behind the auto store, but neither of them saw the defendant pick up any narcotics.

Skokal pulled the vehicle behind the auto store and the defendant approached the driver's side window and again asked Skokal for money. Skokal demanded to see the drugs, and again the defendant demanded to see Skokal's money. This exchange continued until Skokal agreed to show the defendant some money. As soon as Skokal showed his money, the defendant reached into his waistband, removed a revolver, leaned into the car, held the revolver a few inches from Skokal's head and said, "give me the f[---]ing money." Skokal and Plebanski had their service handguns in their laps. Skokal leaned away from the defendant and yelled, "come on, relax, relax, take it easy." The officers then drew their service handguns, yelled "police" and each fired twice at the defendant. The defendant was struck in his upper-left arm, but managed to flee the scene.

Skokal pursued the defendant on foot, while shouting, "I'm a policeman, drop the gun, I'm a policeman." The defendant turned back facing Skokal and ducked behind a parked car. Skokal again ordered the defendant to drop his gun and lay on the ground. The defendant stood up, threw his gun into some weeds, raised his hands, walked out from behind the parked car and laid on the ground as ordered. Plebanski walked over to Skokal, handed Skokal his handcuffs and Skokal cuffed the defendant. Skokal recovered the defendant's handgun from the weeds, which was fully loaded. Plebanski radioed for an ambulance and supervisors.

During the morning of July 26, 2000 the defendant gave three different accounts of the incident. Detective Leonard Rolston ("Rolston") of the CPD testified that he interviewed the defendant at 7:30 a.m. on the day of the incident. At that time, the defendant stated that he approached the officers under the guise that he would sell them drugs, but that he really intended to rob the officers. Rolston testified that he interviewed the defendant again at 8:00 a.m., but that this time the defendant denied trying to rob the officers. Rolston finally testified that he interviewed the defendant once more at 8:30 a.m., at which time the defendant admitted to having attempted to rob the officers.

The same morning, Assistant State's Attorney Thomas Driscoll ("Driscoll") testified that he spoke with the defendant at 8:00 a.m. The defendant told Driscoll that he did not intend to rob the officers, but that he approached the officers' vehicle behind the auto parts store and saw the driver counting money in his lap. The defendant stated that once the driver reached for his pocket, the defendant drew his revolver and backed away from the vehicle. At that point, the defendant stated he heard gun shots and the officers yell, "police, drop your weapon." The defendant told Driscoll that he complied with the officers' demands.

Driscoll also testified that he spoke with the defendant again at 8:15 a.m. This time the defendant stated that the officers asked him for drugs on two occasions, to which he replied that he did not have drugs. But on the second request for drugs, the defendant stated that he became upset and decided to rob the officers. While the defendants' story diverged from the first, it was clear that he intended to rob the officers. The defendant declined, however, to give a handwritten statement.

Stanley Mocadlo, a fingerprint technician for the State's Attorney's Office, testified that on November 8, 2000 he took the fingerprints and palm prints from the defendant and placed

3

them on two cards. He identified as Exhibit 8 the card containing the defendant's fingerprints and identified as Exhibit 9 the card containing the defendant's palm print. He testified that the print cards truly and accurately reflected the print cards as he saw them on November 8, 2000.

Anastasia Petruncio ("Petruncio") testified that she was a forensic scientist specializing in the field of latent fingerprint impressions with the Illinois State Police. She was qualified as an expert. She explained at trial the three points of identification used to compare fingerprints and how she compared a known fingerprint to an unknown fingerprint, like one taken from a crime scene. Petruncio examined the cartridge cases in the defendant's weapon for latent fingerprints that were suitable for comparison. She applied a variety of techniques to find suitable fingerprints. Petruncio lifted one print off of the cartridge case, and compared that print with defendant's inked fingerprint card. Applying the identification method to which she previously testified, Petruncio determined that the prints on the cartridge were made by the defendant. She further testified that the methods she used to lift and to compare the fingerprints were generally accepted in her scientific field. She stated that she followed Illinois State Police standards when conducting the fingerprint comparison, but also that she was not familiar with the procedures used in other agencies. She testified that she read journals and publications in her field, but that she was not familiar with a uniform standard that fingerprint examiners followed in the field. Her findings were subject to peer review and a verification process.

## B. PROCEDURAL HISTORY

On March 8, 2002, after a jury trial in the Circuit Court of Cook County, the defendant was convicted of attempted armed robbery. After denying the defendant's motion for new trial, the trial court sentenced Thompson to 15 years imprisonment under the mandatory Class X sentencing provision of section 5-5-3(c)(8) of the Unified Code of Corrections (the "Code") (730

ILCS § 5/5-5-3(c)(8) (West 2000)). The trial court thereafter denied the defendant's motion to reconsider his sentence and he timely filed a state court appeal.

The defendant appealed his conviction to the Illinois Appellate Court, First District, raising seven claims for review. There the defendant argued that: (1) the state's fingerprint witness, Petruncio, did not qualify as an expert; (2) Petruncio did not provide reasoned support for her expert opinion regarding the fingerprint evidence; (3) the state did not lay a proper foundation to admit the fingerprint evidence; (4) the trial court erred in denying defendant's counsel the opportunity to argue during closing arguments the officers' purported motive to lie; (5) the trial court failed to give the jury a complete Illinois Pattern Jury Instruction Criminal No. 311; (6) the defendant's sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000); and (7) the trial court mistakenly allowed facts not proven beyond a reasonable doubt to increase the defendant's sentence. On January 22, 2004 the appellate court affirmed the defendant's conviction and sentence.

The defendant, in turn, filed a petition for leave to appeal to the Illinois Supreme Court in which he raised all of the above claims. On May 26, 2004 the Illinois Supreme Court denied the defendant's petition. On August 25, 2004 the defendant filed this Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Before the Court is the defendant's Petition, the state's Answer to the Petition and the state court record consisting of one volume. On December 13, 2004 this Court ordered the defendant to respond to the state's Answer on or before February 1, 2005. The defendant failed to file a response, and thus the Court will decide the Petition based on the pleadings submitted.

## II. DISCUSSION

A. STANDARD OF DECISION

Thompson's petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Owens v. Frank, 394 F.3d 490, 496 (7th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court's decision is an *unreasonable application* of clearly established Supreme Court law if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407; see also Owens, 394 F.3d at 496. In order for a state court decision to be considered "unreasonable" under this standard it must be more than

6

incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

Before reviewing the Illinois courts' decisions, however, the court must determine whether O'Neal fairly presented his federal claims to the state courts. Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v.

7

Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991). For example, waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Wright v. Walls, 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state ground in Illinois); Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). However, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Coleman, 501 U.S. at 750; Anderson v. Cowen, 227 F.3d 893, 899 (7th Cir. 2000). Moreover, evidentiary rulings of state trial courts are normally not subject to habeas review. See United States ex. Rel.

8

Bibbs v. Twomey, 506 F.2d 1220, 1223 (7th Cir. 1974). In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted. See Thompkins v. Cohen, 965 F.2d 330, 333 (7th Cir. 1992). With the above principles in mind, the court examines Thompson's Petition.

## B. THOMPSON'S CLAIMS FOR RELIEF UNDER 28 U.S.C. § 2254

Thompson raises seven claims for relief under § 2254. The first three of these claims target the admissibility of the state's forensic evidence regarding Thompson's fingerprints. Thompson asserts: (1) the state's forensic specialist was unaware of the general scientific practices in the field of fingerprint analysis; (2) the forensic specialist provided an incompetent expert opinion; and (3) the state failed to lay a proper foundation for the admission of the inked fingerprint cards with which the forensic specialist compared Thompson's fingerprints. In addition, Thompson asserts: (4) the trial court prohibited defense counsel from arguing the officers' purported motive to lie; (5) the trial court failed to give the complete Illinois Pattern Jury Instruction Criminal No. 311; (6) the sentence was unconstitutional under Apprendi; and (7) the sentence violates the Illinois Constitution as facts affecting his sentence were not proven to the jury beyond a reasonable doubt.

Before the Court reaches the merits of Thompson's claims, we must address whether the state disposed of Thompson's claims on independent and adequate state law grounds. If the state court, in fact, dismissed Thompson's claims on independent state law grounds, federal habeas relief is barred. Wright, 288 F.3d at 947.

### *1. Claims (1), (2) and (3)*

With respect to Thompson's claims (1), (2) and (3), which contest the admission of the state's fingerprint evidence at trial, the state contends that Thompson is barred from raising these claims because Thompson's counsel failed to object at trial to the alleged evidentiary errors and failed to include these claims in his motion for a new trial. A procedural default may occur when a state court has declined to address a prisoner's claims because the prisoner failed to meet an independent and adequate state procedural requirement. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Harris v. Reed, 489 U.S. 255, 263 (1989) (holding that a federal court cannot review a question of federal law if the state court has rejected a petitioner's claim due to an independent and adequate state procedural ground). And, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. Wright, 288 F.3d at 947. We agree with the state insofar as Thompson waived his evidentiary objections at the trial level.

On appeal, the state appellate court relied on Thompson's waiver of these issues as the basis for its decision to affirm his conviction. There, the state appellate court found specifically that Thompson waived these evidentiary issues because he "never objected to the admissibility [of this evidence] at trial and failed to include these issues in his motion for new trial." The state appellate court, in essence, declined to address Thompson's claims because he waived them at the trial level, which is an independent and adequate state ground for dismissal. We therefore find that Thompson's claims are barred from federal habeas relief.

Nevertheless, we recognize that two exceptions exist in the event a petitioner fails to comply with a state's procedural requirements and the state court dismisses his claims on independent and adequate state law grounds. First, we may still reach the merits of Thompson's

first three claims if he shows cause for his failure to comply with the state's procedural rules, and if he shows that actual prejudice resulted from his failure to comply. Riner v. Owens, 764 F.2d 1253, 1258 (7th Cir. 1985) (citing Engle v. Issac, 456 U.S. 107, 129 (1982)). Second, we may also consider Thompson's first three claims if he shows that a fundamental miscarriage of justice or constitutional violation occurred, which probably resulted in the conviction of an innocent person. Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Mills v. Jordan, 979 F.2d 1273, 1277 (7th Cir. 1992). We find that Thompson failed to meet either exception.

Thompson's habeas petition addresses neither a cause for his failure to comply with the state's procedural requirements, nor any actual prejudice that he may have suffered from his failure to comply. As such, we find that Thompson failed to satisfy the first exception to the bar from federal habeas relief. Thompson also failed to address whether a miscarriage of justice or constitutional violation occurred as a result of his failure to object to the state's fingerprint evidence at trial and its eventual admission. Yet, even if Thompson raised an argument for this exception, we find that it would likely fail.

We find that the admission of the state's fingerprint evidence did not constitute an evidentiary error. And, even if it did, the admission of the state's fingerprint evidence did not produce a significant likelihood that an innocent person was convicted. The state's fingerprint evidence, quite simply, corroborated the fact that Thompson possessed a handgun during the attempted armed robbery. This fingerprint evidence was introduced at trial amidst the testimony of several other witnesses who confirmed that Thompson possessed a handgun during the attempted robbery. For instance, two other witnesses, indeed the two officers that Thompson attempted to rob, both testified that Thompson possessed a handgun at the scene. Testimony adduced at trial further shows that Thompson referred to "my gun" during statements elicited

from Thompson after the attempted robbery. Given this testimony, we agree with the state that the admission of tainted fingerprint evidence could not result in a fundamentally unfair proceeding.

We find that Thompson's first three claims for relief under § 2254 are barred from federal habeas relief because: Thompson failed to object to these issues at trial and failed to raise them in his post-trial motions; the state appellate court declined to address Thompson's claims because he waived them at the trial level, which was an independent and adequate state law ground for dismissal; Thompson failed to show cause for his failure to comply with the state's procedural requirements; and a fundamental miscarriage of justice did not occur. Thompson's petition for Writ of Habeas Corpus based on his challenges to the state's fingerprint evidence is therefore denied.

## 2. *Claims (1), (2), (3), (4), (5) and (7)*

Thompson's claims (1) - (5) and (7) allege that the state court erroneously interpreted state law. As such, the initial inquiry for this Court is whether these claims are cognizable for federal habeas relief.

A federal court may grant habeas relief only to persons who can establish that their incarceration violates the Constitution or United States' laws or treaties. Estelle v. McGuire, 502 U.S. 62, 67 (1991); Haas v. Abrahmson, 910 F.2d 384, 389 (7th Cir. 1990). In other words, federal habeas relief is not available for error of state law, and federal courts are bound by the state court's interpretation of state law. Lechner v. Frank, 341 F.3d 635, 642 (7th Cir. 2003). Indeed, violations of state evidentiary rules are non-cognizable and may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. U.S. ex. rel. Searcy v. Greer, 768 F.2d 906, 910 (7th Cir.

1985). This theory also applies to jury instructions, as it is not a basis for federal habeas relief if a jury instruction is allegedly incorrect under state law. Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004) ("Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review."); Dressler v. McCaughtry, 238 F.3d 908, 914 (7th Cir. 2001).

Thompson's claims (1), (2), (3), as discussed previously, all derive from the state trial court's evidentiary determinations regarding the state's fingerprint evidence. Claim (4) is based on the trial court's evidentiary ruling to exclude from closing arguments any contention that the officers had a motive to lie because no trial evidence supported such a contention. Accordingly, we find that claims (1), (2), (3) and (4) are not cognizable on habeas review because they raise only state evidentiary issues, not constitutional issues.

We will, however, examine Thompson's alleged violations of state law to determine whether they resulted in a fundamental unfairness to him in violation of due process. For a violation of due process to have occurred, the alleged errors must be so prejudicial that they compromise a petitioner's right to a fair trial. Mills, 979 F.2d at 1277. We find as to claims (1), (2) and (3) that the alleged errors neither resulted in fundamental unfairness, nor compromised Thompson's right to a fair trial. Thompson's claims (1), (2) and (3) all allege erroneous evidentiary determinations that, for the reasons discussed previously, did not result in fundamentally unfair proceedings.

Thompson's claim (4) alleges that the state court was mistaken to sustain an objection regarding his defense that the officers had a motive to lie because the officers would lose their families and homes if they were fired. We find, however, that this did not result in a fundamentally unfair trial. In fact, Thompson's counsel had at least two opportunities to submit

to the jury the theory that the officers had a motive to lie in order to keep their jobs. The state court merely held that Thompson's counsel could not mention during closing arguments that the officers would lose their homes and families if they lost their jobs. In sustaining the state's objection to this inference, the state court found that there had been no evidence presented to support such an inference. If an error at all, this was indeed a harmless error. Nevertheless, the state presented adequate evidence from which a reasonable jury could convict Thompson despite any alleged evidentiary error. In turn, we find that any alleged error did not deprive Thompson of a fundamentally fair trial.

Thompson's claim (5) alleges that the trial court gave an improper jury instruction, in violation of Illinois law, when it failed to give the complete Illinois Pattern Jury Instruction ("IPI") No. 311 regarding the use of prior inconsistent statements as substantive evidence. Thompson, as a result, asserts that he was denied his right to a fair trial. Again, Thompson raises a purported misapplication of state law, which is outside of the purview of habeas relief. U.S. ex. rel. Askew v. Briley, 2002 WL 1759826, at *3 (N.D. Ill. July 29, 2002) (finding non-cognizable a petitioner's habeas claim that a state court gave improper jury instructions). Thus, the only question we must consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Canaan v. McBride, 395 F.3d 376, 388 (7th Cir. 2005). We find that it did not.

The Illinois Pattern Jury Instruction, Criminal No. 311 provides:

> "The believability of a witness may be challenged by evidence that on some former occasion he [(made a statement) (acted in a manner)] that was not consistent with his testimony in this case. Evidence of this kind [ordinarily] may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom.
>
> [However, you may consider a witness's earlier inconsistent statement as evidence without this limitation when

14

> [1] the statement was made under oath at a [(trial) (hearing) (proceeding)].
>
> [or]
>
> [2] the statement narrates, describes, or explains an event or condition the witness had personal knowledge of;
>
> and
>
> [a] the statement was written or signed by the witness.
>
> [or]
>
> [b] the witness acknowledged under oath that he made the statement.
>
> [or]
>
> [c] the statement was accurately recorded by a tape recorder, videotape, recording, or a similar electronic means of sound recording.]
>
> It is for you to determine [whether the witness made the earlier statement, and, if so] what weight should be given to that statement. In determining the weight to be given to an earlier statement, you should consider all of the circumstances under which it was made."

The state court read to the jury only the bracketed phrase beginning with "however," and subsection 1, but did not include any part of subsection 2. The appellate court noted, citing the committee notes to IPI Criminal 3.11, that this instruction should be given in its entirety only when prior inconsistent statements are offered for both the limited purpose of impeachment and as substantive evidence under the Illinois Code of Criminal Procedure. Recognizing this, Thompson argued to the appellate court that he impeached three witnesses using various omissions in their police reports, and thus those prior inconsistent statements were offered for impeachment and as substantive evidence; thus, the entire instruction should have been read to the jury. Yet, we need not undergo a determination of whether Thompson used the officers'

15

inconsistent statements to impeach or whether they constituted substantive evidence. We find that even if the state court was required to read to the jury the entire instruction, this error did not result in a conviction that violates due process.

The degree of prejudice resulting from an error in jury instruction must be evaluated in the total context of the events at trial. Burris v. Farley, 845 F.Supp. 636, 647 (7th Cir. 1994). A single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). It is well-established that the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction, Id. at 147, and that the burden of demonstrating that an erroneous instruction was so prejudicial that it will support habeas relief is even greater than the showing required to establish plain error on direct appeal. See Henderson v. Kibbe, 431 U.S. 145, 154 (1977). In this instance, we find that the court's reading of the alleged erroneous instruction, in light of the evidence against Thompson introduced at trial, did not violate his right to a fair trial. We cannot say, given Thompson's inculpatory statements, that the jury's verdict would have been any different had it received the complete Illinois jury instruction.

Thompson's claim (7) alleges that the court misinterpreted the Illinois Constitution when it considered his prior convictions to increase his sentence because the facts of those prior convictions were not proven to a jury beyond a reasonable doubt. There is no question that Thompson's claim (7) is grounded in and previously decided under Illinois law and is thus non-cognizable for habeas relief. In any event, because Thompsons' claim (7) is sufficiently tied to Thompson's claim (6), this Court shall discuss them concurrently.

16

### 3. *Claim (6) and (7)*

Again, Thompson takes issue with the trial court's sentence of 15 years imprisonment under the mandatory Class X sentencing provision of section 5-5-3(c)(8) of Illinois' Unified Code of Corrections. Thompson argues in claims (7) and (6), respectively, that under the Illinois Constitution and pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) the state was required to, but otherwise did not submit to the jury and prove beyond a reasonable doubt the facts surrounding his two prior convictions for robbery and burglary. We acknowledge that <u>Apprendi</u> requires that any fact that increases the statutory maximum sentence for a crime be proven beyond a reasonable doubt. However, what Thompson fails to realize is that <u>Apprendi</u> carved out an exception for "the fact[s] of a prior conviction." See <u>Apprendi</u>, 530 U.S. at 490. Moreover, Illinois courts have routinely held that section 5-5-3(c)(8) of the Unified Code of Corrections is constitutional, and thus have continually rejected Thompson's exact argument in previous cases. We find that the state trial court operated under <u>Apprendi</u>'s exception when it sentenced Thompson to 15 years imprisonment under the mandatory Class X provision of the Illinois Unified Code of Corrections. As such, the sentence did not violate any of Thompson's constitutional guarantees.

## III. CONCLUSION

For the foregoing reasons, Thompson's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 4/8/08

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M. ANGELA LENGERICH et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case no. 07-1595 |
| ) | |
| COLUMBIA COLLEGE ) | Hon. Charles Norgle |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT COLUMBIA COLLEGE'S MOTION TO RESET
BRIEFING SCHEDULE ON MOTION FOR SUMMARY JUDGMENT**

1. On January 10, 2008, Judge Filip entered an order setting a briefing schedule on defendant Columbia College's yet-to-be-filed motion for summary judgment (Dkt. 68). Pursuant to the briefing schedule, the fully-briefed motion was to be heard by Judge Filip on May 15, 2008.

2. On March 6, 2008 (Dkt. 71), the Court's Executive Committee entered an order reassigning this case to Judge Norgle.

3. On March 7, 2008, Judge Filip entered an order striking the May 15, 2008 hearing date.

4. Columbia respectfully requests that the Court enter a new briefing schedule and hearing date on Columbia College's motion for summary judgment.

WHEREFORE, defendant Columbia College respectfully requests that the Court enter a new briefing schedule and hearing date on Columbia College's motion for summary judgment

Respectfully submitted:

**DEFENDANT COLUMBIA COLLEGE**

By: /s/ Barry F. Mac Entee
One of their attorneys

Renée P. O'Neill (6229976)
Barry F. MacEntee (6275410)
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601-1081
312-704-3000
312-704-3001 (fax)